[Cite as *State v. Matthews*, 2011-Ohio-4329.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 13-10-52

      v.

RONALD R. MATTHEWS, SR.,         O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 13-10-53

      v.

RONALD R. MATTHEWS, SR.,         O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Fostoria Municipal Court**
**Trial Court Nos. TRC1000500AB and CRB1000117**

**Judgments Affirmed in Case No. 13-10-52 and**
**Appeal Dismissed in Case No. 13-10-53.**

**Date of Decision: August 29, 2011**

APPEARANCES:

      *Randy F. Hoffman and Charles R. Hall, Jr.* for Appellant

      *Barbara A. Dibble and Carol Reffner* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Ronald R. Matthews, Sr. ("Matthews"), appeals the November 15, 2010 judgment of the Fostoria Municipal Court journalizing his convictions by a jury for having physical control of a vehicle while under the influence and driving under OVI suspension.

{¶2} On March 17, 2010, at 9:29 p.m., a dispatcher with the Seneca County Sheriff's Office received a phone call from a woman, who identified herself as Marlise Matthews, and reported that her husband, Matthews, was driving while drunk. The caller explained that she had just spoken to Matthews on the phone. She believed Matthews to be heavily intoxicated and expressed her concern for his safety and the safety of others. She advised the dispatcher that Matthews was driving from Tiffin toward Fostoria. She further informed the dispatcher of the probable route Matthews would be taking. The caller described Matthews' vehicle by color, make, and model. She also gave the dispatcher the first three letters of the license plate as an additional identifier.

{¶3} At approximately, 10:15 p.m., officers Nate Elliott and Derek Wensinger of the Fostoria Police Department responded to the dispatch regarding Matthews and located his vehicle parked in a strip mall parking lot adjacent to a Taco Bell. Prior to approaching Matthews' vehicle, the dispatcher informed the officers that Matthews was under an administrative license suspension.

{¶4} The officers observed Matthews in the driver's seat, behind the wheel, and another man in the front passenger seat. Both men were eating Taco Bell when the officers approached the vehicle. Officer Wensinger noticed that the keys were still in the ignition. Officer Elliott asked Matthews for his license, registration and insurance card. Matthews handed the officer an Ohio identification card and explained that he had driving privileges to and from work. While interacting with Matthews, Officer Elliott noticed a strong odor of alcohol on Matthews' breath and that his eyes appeared to be bloodshot and glassy. Matthews told the officer that he was driving home to Bowling Green from work in Tiffin as a tree trimmer. However, Matthews also admitted that he was at the Clover Club, which is a bar and restaurant in Tiffin, immediately prior to speaking with the officers. Matthews was wearing a lime green T-shirt promoting the St. Patrick's Day celebration that day at the Clover Club. Matthews admitted to Officer Elliott that he had consumed a "few" drinks that night. Officer Elliott asked Matthews to submit to a series of field sobriety tests and subsequently determined him to be under the influence.

{¶5} Officer Wensinger asked the passenger, Donald Romig, whether there were any open containers in the vehicle. Romig denied any alcohol being the car. Officer Wensinger observed Romig to be heavily intoxicated and slow to respond. Officer Wensinger asked Romig to step out of the vehicle. Romig complied with

the officer's request. It was then that Officer Wensinger noticed a twelve-pack of Corona in the vehicle. He also located two half-full and cold to the touch open bottles hidden underneath a coat. Officer Elliott conducted a search of the vehicle for more open containers and noticed the smell of "raw marijuana" in the vehicle. Officer Elliott subsequently found a small amount of marijuana in the car, which Matthews admitted was his.

{¶6} Matthews was placed under arrest and charged with driving under OVI suspension, in violation of R.C. 4510.14, and having physical control of a vehicle while under the influence, in violation of R.C. 4511.194(B)(1), in case TR 1000500. He was also charged with possession of marijuana, in violation of R.C. 2925.11(A), in a separate case, CR 1000117. Matthews refused to submit to a chemical test.

{¶7} The trial was held on September 8, 2010. The charges of having physical control of a vehicle while under the influence and driving under OVI suspension were tried to a jury. The charge of possession of marijuana was tried to the bench. At trial, the state offered testimony from the dispatcher, who received the initial report of Matthews' suspected drunk driving, Officers Elliott and Wensinger, and Sergeant Don Joseph, who conducted the chemical analysis on the marijuana found in Matthews' car. Matthews presented no evidence at trial.

{¶8} At the close of the evidence, the jury found Matthews guilty on both counts of having physical control of a vehicle while under the influence and driving under OVI suspension. The trial court also found Matthews guilty of possession of marijuana. The trial court sentenced Matthews to serve three days in jail on the physical control violation and driving under OVI suspension, each jail term to be served consecutively.

{¶9} Matthews now appeals, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE JURY VERDICT OF GUILTY ON THE CHARGES OF DRIVING UNDER SUSPENSION AND PHYSICAL CONTROL OF A VEHICLE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN EACH CASE.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN PERMITTING THE STATE OF OHIO TO PLAY THE RECORDING OF THE TELEPHONE TIP TO [THE] SENECA COUNTY SHERIFF [*SIC*] DEPARTMENT DISPATCH AS THE RECORDING WAS HEARSAY WITHOUT BEING A BUSINESS RECORD UNDER THE OHIO EVIDENCE RULE 803(b) [*SIC*].**

{¶10} Initially, we note that there are two consolidated cases before us on appeal, TR 1000500 involving Matthews' convictions for having physical control of a vehicle while under the influence and driving under suspension, and CR 1000117 involving Matthews' conviction for possession of marijuana. After reviewing Matthews' assignments of error, it is evident that they pertain only to

his convictions in case number TR 1000500, appeal number 13-10-52.  Therefore, having raised no error regarding his conviction in CR 1000117, appeal number 13-10-53 corresponding to that case will be dismissed.

{¶11} In his first assignment of error, Matthews argues that his convictions for having physical control of a vehicle while under the influence and driving while under OVI suspension are against the manifest weight of the evidence.  An appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541.  In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony.  *Id.*  In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Andrews*, 3rd Dist. No. 1-05-70, 2006-Ohio-3764, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶12} Section 4511.194 of the Revised Code governs the offense of having physical control of a vehicle while under the influence and states, in relevant part:

**(B)   No person shall be in physical control of a vehicle, streetcar, or trackless trolley if, at the time of the physical control, any of the following apply:**

**(1)   The person is under the influence of alcohol, a drug of abuse, or a combination of them.**

On appeal, Matthews' main contentions with respect to his conviction for this offense are that the officers did not observe him driving his vehicle and that the officers had insufficient evidence to determine him to be under the influence.

{¶13} Physical Control is defined by the Revised Code in the following manner, " 'Physical control' means being in the driver's position of the front seat of a vehicle or in the driver's position of a streetcar or trackless trolley and having possession of the vehicle's, streetcar's, or trackless trolley's ignition key or other ignition device." R.C. 4511.194(A)(2).

{¶14} Here, both officers testified that Matthews was seated in the driver's seat behind the wheel, with the engine turned off, when they made their initial contact with him. Officer Wensinger testified that he approached the vehicle from the passenger's side and could see that the keys were still in the ignition. Notwithstanding this evidence, Officer Elliott also testified that Matthews stated that he drove to the location where the officers found him and the LEADS report

indicated that the vehicle was registered in Matthews' name. Based on this testimony, we find that the jury did not err in concluding that Matthews was in physical control of the vehicle.

{¶15} Officer Elliott testified that when he conversed with Matthews, he smelled a strong odor of beer on Matthews' breath and observed Matthews' eyes to be bloodshot and glassy. Officer Elliott testified that Matthews was very cooperative and admitted to consuming a "few" drinks that evening. (Tr. p. 112). Matthews also complied with Officer Elliott's request to perform field sobriety tests. Officer Elliott testified that Matthews "did fine" on the finger-to-thumb test and reciting the alphabet without singing the letters. (Tr. p. 118-19). However, Officer Elliott testified that when he conducted the Horizontal Gaze Nystagmus test ("HGN") he observed involuntary twitching in Matthews' eyes during the test. Officer Elliott recalled that he also had to instruct Matthews to keep his head still while performing the test. Officer Elliott testified that he observed six out of six clues during Matthews' performance of the test, which indicated that he was impaired. This evidence, combined with the fact that two open containers cold to the touch were found in the car, created a reasonable inference for the jury to conclude that Matthews was under the influence while being in physical control of the vehicle. Accordingly, we find no evidence to support Matthews' contention that in rendering its verdict the jury clearly lost its way and created a manifest

miscarriage of justice. Therefore, we conclude that the jury's guilty verdict on the physical control violation was not against the manifest weight of the evidence.

{¶16} Matthews also contends that the jury's verdict finding him guilty of driving while under OVI suspension was against the manifest weight of the evidence. Matthews does not dispute that he was under an administrative license suspension at the time, however, he contends that the officers never observed him driving and nevertheless argues that he had driving privileges to and from work.

{¶17} As noted above, Officer Elliott testified that Matthews admitted to driving to the location where the officers approached him. Moreover, there is ample circumstantial evidence for the jury to reasonably infer that Matthews was driving the vehicle. In addition to him being seated in the driver's seat, behind the wheel, in a vehicle registered to him with the keys in the ignition, Officer Wensinger testified that the passenger of the vehicle, Donald Romig, was so heavily intoxicated that he had to be helped out of the vehicle and into the police cruiser by Officer Wensinger, indicating that it was very unlikely Romig was the one driving the vehicle. Accordingly, we are not persuaded by Matthews' argument that there was insufficient evidence for the jury to conclude that he was driving the vehicle that night.

{¶18} The evidence at trial demonstrated that Matthews' driver's license was suspended from November 18, 2009, to November 18, 2010, due to his

refusal to submit to a chemical test on a prior OVI offense committed in Bowling Green. There was also evidence presented at trial that Matthews was granted driving privileges by the court to and from work in Tiffin. Officer Elliott recalled that, at the time of the incident, Matthews showed him court paperwork stating he had driving privileges. Moreover, the document issued by the Bowling Green Municipal Court setting forth the parameters of Matthews' driving privileges was admitted as evidence at trial. However, the document specifically stated that "you may drive TO AND FROM HOME AND WORK BY THE MOST DIRECT ROUTE AND WHILE AT WORK FOR WORK PURPOSES ONLY." (State's Ex. F, p.18) (Emphasis in original).

{¶19} Officer Elliott testified that Matthews told him that he was coming from work, as a tree trimmer, prior to being approached by the officers. The officers encountered Matthews at approximately 10:15 p.m. and there was testimony that it was dark outside. There was no testimony to indicate that Matthews had been working up until that point. Rather, Officer Elliott also testified that Matthews admitted he was at the Clover Club, where he had a few drinks immediately prior to his contact with the officers. There was no evidence in the record that the Clover Club was part of the Matthews' most direct route between home and work or that his time spent at the bar had any work related purpose. Although the record supports that Matthews' had driving privileges,

there was nothing in the record to suggest that he was operating his vehicle within the scope of his limited driving privileges. Accordingly, we find that the jury verdict finding Matthews guilty of driving under OVI suspension was not against the manifest weight of the evidence. Based on the foregoing, Matthews' first assignment of error is overruled.

{¶20} In his second assignment of error, Matthews maintains that the trial court committed reversible error when it permitted the prosecution to play the recorded tip informing the dispatcher of Matthews' alleged drunk driving to the jury when the prosecution failed to present sufficient evidence that the recording was admissible as a business record exception to the hearsay rule under Evid. R. 803(6).

{¶21} At trial, the court permitted the prosecution to play the telephone tip to the jury while the dispatcher, who received the call, was on the stand. However, the trial court later denied the prosecution's request to admit the recording as an exhibit because the prosecution failed to demonstrate that the recording was not offered for the truth of the matter asserted—i.e., that Matthews was driving drunk.

{¶22} In sum, the dispatcher took the stand and testified to the information she relayed to the officers that night—specifically that she received a report of a suspected drunk driver with particular details to identify the person. The officers'

testimony corroborated the information they received from the dispatcher. Both of the officers testified that Matthews admitted to them that he had drank a "few" at the Clover Club immediately prior to his encounter with the officers, and that based on their observations and Matthews' performance on the field sobriety tests, Matthews' was determined to be under the influence. As previously discussed, there was also evidence that Matthews told the officers that he drove his vehicle to the location where the officers approached him, as well as circumstantial evidence establishing that Matthews was driving his vehicle that evening. Notwithstanding this evidence in the record, Matthews was not charged with OVI, but with a physical control violation, which does not require proof that the person was actually operating the vehicle only that he or she was in physical control of the vehicle. Therefore, any insinuation that Matthews was driving drunk that evening is irrelevant to the physical control charge for which he was convicted.

{¶23} Accordingly, we conclude that even if the playing of the tape during the testimony of the dispatcher was somehow unnecessary or cumulative to the state's case, it does not constitute reversible error. Matthews' second assignment of error is overruled.

Case Nos. 13-10-52 and 13-10-53

**{¶24}** For all these reasons, the judgments in TR 1000500 are affirmed and

the appeal relating to CR 1000117 will be dismissed.

*Judgments Affirmed in Case No. 13-10-52, and*
*Appeal Dismissed in Case No. 13-10-53.*

**ROGERS, P.J. and PRESTON, J., concur.**

**/jlr**