[Cite as *State v. Duncan*, 2013-Ohio-2384.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  8-12-15

    v.

KEVIN DUNCAN,                         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. 12-03-0066

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   June 10, 2013

APPEARANCES:

    *Marc S. Triplett*  for Appellant

    *William T. Goslee and Daniel J. LaRoche*  for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Kevin L. Duncan ("Duncan") appeals the October 22, 2012, judgment of the Logan County Common Pleas Court sentencing Duncan to five years in prison after a jury convicted Duncan of Robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree.[1]

{¶2} On March 27, 2012, Duncan was indicted in a two-count indictment for Robbery (Count I), in violation of R.C. 2911.02(A)(2), a felony of the second degree, and Trafficking in Drugs (Count II), in violation of R.C. 2925.03(A)(1), a felony of the fifth degree. (Doc. 2).

{¶3} On March 30, 2012, Duncan was arraigned and pled not guilty to the charges. (Doc. 9). An entry reflecting this was filed April 9, 2012. (*Id.*)

{¶4} On May 2, 2012, the State filed a Bill of Particulars. (Doc. 13). The Bill of Particulars alleged as to Count I, the Robbery charge, that on February 2, 2012, Duncan forcibly took $20 cash and a digital recorder from a confidential informant during a controlled drug buy. (*Id.*) It was alleged that the informant had red marks on her neck from the force used by Duncan. (*Id.*) As to Count II of the indictment, the Trafficking in Drugs charge, the State alleged that on January 19, 2012, the confidential informant purchased $20 worth of suspected crack cocaine from Duncan. (*Id.*)

---

[1] Duncan was also sentenced to serve twenty-two months in prison for violating the terms of his post release control, to be served consecutively to his five year prison term on the Robbery conviction.

{¶5} On October 2-3, 2012, a jury trial was held. At trial, the State called Stormi Kiser ("Kiser"), the confidential informant involved in this case, and Detective Keith LeVan ("Detective LeVan"), the Detective that worked on this case. Following the testimony of these two witnesses, the State rested. Duncan's counsel cross-examined both of the State's witnesses but did not call any witnesses in its case-in-chief, and rested. Following closing arguments and jury instructions, the case was submitted to the jury.

{¶6} After deliberating, the jury found Duncan guilty of the Robbery charge, but found him not guilty of the Trafficking in Drugs charge. The court set sentencing for October 8, 2012.

{¶7} On October 8, 2012, the court sentenced Duncan to five years in prison on the Robbery conviction. (Doc. 50). Finding that Duncan was also in violation of his Post-Release Control on another charge out of Clark County, the court also sentenced Duncan to twenty-two months in prison, to be served consecutive to the Robbery charge in this case. (*Id.*) A judgment entry reflecting this sentence was filed October 22, 2012. (*Id.*)

{¶8} It is from this judgment that Duncan appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**COUNT I OF THE VERDICT IS NOT BASED UPON SUFFICIENT EVIDENCE.**

**ASSIGNMENT OF ERROR 2
COUNT I OF THE VERDICT IS NOT SUPPORTED BY THE
WEIGHT OF THE EVIDENCE.**

**ASSIGNMENT OF ERROR 3
THE TRIAL COURT ERRED WHEN IT IMPOSED COSTS
AND ADDITIONAL FEES IN ITS SENTENCING ENTRY.**

*First Assignment of Error*

**{¶9}** In his first assignment of error, Duncan argues that there was insufficient evidence to convict him. Specifically, Duncan claims that the State failed to prove "venue" in his Robbery conviction, as there was no explicit testimony that the crime occurred in Logan County. Duncan does not argue that there was insufficient evidence to support the remaining elements of his conviction.[2]

**{¶10}** Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113 (1997).

---

[2] Rather, Duncan argues in the next assignment of error that his conviction was against the manifest weight of the evidence.

-4-

{¶11} In a criminal case, venue is not a material element, but the State must still prove venue beyond a reasonable doubt. *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). "Venue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *State v. Chintalapalli*, 88 Ohio St.3d 43, 45 (2000). Venue need not be proven in express terms. *Id.* Rather, it can be established by all of the facts and circumstances viewed in the light most favorable to the state. *Id.* In addition, it has been stated that a trial court has broad discretion to determine the facts which would establish venue. *See, e.g., State v. Mills,* 6th Dist. No. WM–09–014, 2010-Ohio-4705, ¶ 22; *State v. Gonzalez*, 3d Dist. No. 14-09-09, 2012-Ohio-982; *State v. Issa,* 8th Dist. No. 90622, 2008-Ohio-5592, ¶ 12.

{¶12} On appeal, Duncan claims that "venue" was not explicitly established with regard to his Robbery conviction. At the outset, we would note that Duncan is correct in arguing that there was no testimony specifically stating the Robbery took place in Logan County. However, there was a significant amount of testimony from Detective LeVan from which it could be properly deduced that the Robbery took place in Logan County.

{¶13} Detective LeVan testified that he had been employed with the Logan County Sherriff's Office for over 31 years, which included 6 years as a detective. (Tr. at 148). Regarding the incident in question, Detective LeVan testified that on

February 2, 2012, he picked up Kiser then drove to a "county" employee parking lot where he prepared Kiser for the controlled buy. (Tr. at 161). Detective LeVan testified that the parking lot was located "across the street * * * from the old Logan County Sheriff's Office, which is now the Logan County JDC." (Tr. at 162). Detective LeVan testified that from there, he drove Kiser to the parking lot of the Logan County Library and parked in that lot while Kiser *walked* to make the drug buy. (Tr. at 162). Detective LeVan further testified that after exiting the vehicle, Kiser returned approximately five minutes later. (Tr. at 163).

{¶14} Detective LeVan testified that he understood the controlled purchase was to occur at 120 West Brown Street. (Tr. at 162-63). Detective LeVan also testified he was familiar with the area as his department had previously made drug purchases there. (Tr. at 163). Finally, after the Robbery, Detective LeVan testified that he contacted Officer Comstock of the Bellefontaine Police Department to assist him in searching 120 West Brown Street for Duncan.

{¶15} Although Detective LeVan may not have expressly stated that the address where the Robbery occurred was in Logan County, his testimony regarding the facts and circumstances surrounding the incident, including the various Logan County locations and landmarks, was sufficient to support a finding, beyond a reasonable doubt, that the Robbery occurred in Logan County. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶16}** In his second assignment of error, Duncan argues that his Robbery conviction was against the manifest weight of the evidence. Specifically, Duncan argues that the testimony against him by Kiser was not credible, that the State did not establish beyond a reasonable doubt that it was Duncan that robbed Kiser, and that the State did not establish proof beyond a reasonable doubt that Kiser had even been robbed.

**{¶17}** The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

**{¶18}** Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *Volkman, supra,* at ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id.* In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and

determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Andrews,* 3d Dist. No. 1–05–70, 2006-Ohio-3764, ¶ 30, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *Thompkins*, 78 Ohio St.3d at 387.

{¶19} Duncan was convicted of Robbery, in violation of R.C. 2911.02(A)(2), which reads as follows.

> **(A)  No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:**
>
> **\* \* \***
>
> **(2)  Inflict, attempt to inflict, or threaten to inflict physical harm on another;**

{¶20} In order to prove that Duncan committed the Robbery as alleged, the State first called Kiser, a confidential informant that had been working with Detective LeVan to conduct controlled drug buys.  Kiser testified that in 2007, Detective LeVan approached her and asked her if she wanted to work as a confidential informant.  (Tr. at 70).  Kiser testified at the time she did not accept the offer.  (Tr. at 70).  Later, in early 2012, Kiser testified that she approached Detective LeVan and began working for him as a confidential informant.  (Tr. at 71).

{¶21} According to Kiser, she brought up Duncan when speaking with Detective LeVan as a person she believed to be selling drugs. (Tr. at 72). Kiser testified that she then set up a buy with Duncan. (Tr. at 76). Kiser further testified that on January 19, 2012, she proceeded to Duncan's apartment behind Wal Mart in Bellefontaine and purchased drugs from Duncan. (Tr. at 81). Kiser testified that Detective LeVan drove her to the drug buy, searched her, and put an audio recording device on her.[3] (Tr. at 79). Kiser testified that she completed the buy in Duncan's apartment, purchasing $20 worth of crack-cocaine.

{¶22} Kiser testified that she set up a second drug buy with Duncan on February 2, 2012, which was to take place in a different location. (Tr. at 96). She testified that Detective LeVan picked her up over by the library, searched her, gave her money to purchase the drugs, placed two recording devices on her, and then dropped her off at the library, near the location of the alleged drug buy. (Tr. at 96).

{¶23} Kiser testified that when she got to the designated house for the drug buy, Vance Brown, a third party, began speaking with her through the window about money that she purportedly owed him. Kiser testified that she met Duncan on the enclosed back porch of Vance Brown's residence. (Tr. at 98). Kiser testified that she handed Duncan the $20 that Detective LeVan had given to her to

---

[3] This incident led to the "Trafficking in Drugs" charge that Duncan was charged with in this case. Duncan was ultimately acquitted of that charge.

buy drugs. (Tr. at 99). According to Kiser, Duncan then told her to "come here" for a minute, so she moved back toward Duncan, and that Duncan then "rough[ly]" grabbed the wire off of her left shoulder. (Tr. at 99). Kiser testified that Duncan then "palmed" her ear, putting his palm to her ear with "strong force." (Tr. at 100). She testified that such a degree of force was used that she went to the ground. (*Id*.) Further, Kiser testified that Duncan was then trying to "figure out where the rest of the wire went because it came out of the top of [her] shirt." (Tr. at 100). Kiser testified that she struggled against Duncan trying to get away, and ultimately ran back to Detective LeVan's car. (*Id*.)

{¶24} According to Kiser, Duncan had taken one of the audio recording devices, and the money she had given Duncan to purchase drugs. (Tr. at 101). Kiser testified that from the altercation her body was sore and her neck had red marks on it, which was confirmed by a picture of the red marks entered into evidence. (State's Ex. 8).

{¶25} Audio from the second recording device that was not taken by Duncan was played at the trial. Two different male voices can be heard on the recording. Kiser testified that the first male that can be heard talking to her is Vance Brown, and the second is Duncan. A brief altercation can be heard between Kiser and the second male voice, wherein Kiser shouts, and says "Quit playing, man. Get the fuck off of me. Get off. Get off – off." (State's Ex. 5; Tr. at 107).

**{¶26}** After Kiser testified, Duncan's attorney cross-examined her. On cross-examination, Kiser admitted to having a 2007 conviction for drug possession and that she had off and on been using drugs. (Tr. at 117, 125). She also admitted that she had recent felony convictions in Logan County for theft and obstruction of justice, and that some charges against her had been dismissed. (Tr. at 117-18).

**{¶27}** Once Kiser's testimony was complete, the State called Detective LeVan. Detective LeVan testified that at the time of this incident he was a Detective with the Logan County Sheriff's Office.[4] (Tr. at 148). He testified that he had worked in law enforcement for over 31 years, and that he had been a detective for six years. (*Id*.)

**{¶28}** Detective LeVan testified that he made a deal with Kiser that she would act as a confidential informant doing controlled drug buys in exchange for money, $50 per buy. (Tr. at 150). Detective LeVan testified that he never approached the prosecutor on her behalf to get any charges pending against her reduced or dropped and that approaching the prosecutor was never part of any deal that he made with Kiser. (*Id*.)

**{¶29}** Detective LeVan testified that Kiser brought Duncan's name to her, and that he had never heard of Duncan prior to Kiser bringing him up. (Tr. at

---

[4] Detective LeVan testified that he had since retired.

152).   Detective LeVan testified that on January 19, 2012, he conducted a controlled drug purchase along with Kiser.

**{¶30}** Detective LeVan testified that on February 2, 2012, he and Kiser convened to conduct a second controlled drug buy from Duncan.   Detective LeVan testified that on February 2, 2012, he picked up Kiser and then drove her to a parking lot where he searched Kiser, placed two audio recording devices on her, and gave her money to purchase drugs with.   (Tr. at 161).   Detective LeVan testified that he then drove Kiser to the Logan County Library's parking lot and let her out so that she could walk to the designated house to make the purchase.   (Tr. at 162).   According to Detective LeVan, Kiser got out of the car and walked across the street.   (Tr. at 163).   Detective LeVan testified that Kiser returned about five minutes later frantic, crying and out of breath.   (Tr. at 163).   Detective LeVan testified that Kiser said she had been robbed and assaulted.   (Tr. at 164).   He further testified that Kiser was "disheveled" and that "she had red marks around the neck area of her face."   (*Id.*)

**{¶31}** Detective LeVan testified that upon Kiser's return he contacted local law enforcement, which subsequently responded to the scene and helped him search the Brown residence for Duncan.   (Tr. at 166).   Detective LeVan testified that they found Brown at the residence but not Duncan.   (Tr. at 165).

{¶32} On cross-examination, Detective LeVan testified that he did not have knowledge of Kiser's pending legal trouble. (Tr. at 170). Detective LeVan also admitted that he did not actually see Duncan enter or leave the Brown residence at or around the time of the incident, though he was not parked in a position where he could see the residence. (Tr. at 178). Detective LeVan further testified that Brown was arrested and had a large sum of money and an EBT food stamp card. (Tr. at 179).

{¶33} After Detective LeVan testified, the State rested. Duncan did not call any witnesses to testify on his behalf.

{¶34} On appeal, Duncan claims that the State did not establish proof beyond a reasonable doubt that Duncan was the individual who robbed Kiser, or that Kiser was even the victim of the robbery. Duncan further argues that Kiser's testimony was not credible based on her struggles with drug addiction, and her legal problems.

{¶35} Despite Duncan's arguments on appeal, the jury heard testimony from Kiser that Duncan took the $20 that had been given to her to purchase drugs and one of the two audio recording devices Kiser had placed on her by Detective LeVan to record the controlled drug buy. The jury also heard Kiser testify that Duncan palmed the side of her face, and saw photographs that Detective LeVan

took indicating the red marks that were left on her neck. The money and the audio recording devices that Kiser claimed were taken by Duncan were not recovered.

**{¶36}** In addition to Kiser's testimony, the jury heard the audio recording from the incident from the second audio recording device that was placed on Kiser, wherein Kiser could be heard telling someone to "get off" of her. (State's Ex. 5). The audio is thus consistent with Kiser's testimony regarding the events.

**{¶37}** The jury also heard testimony from Detective LeVan regarding Kiser's physical and emotional state upon her return to his vehicle following the robbery, including Detective LeVan's observations regarding Kiser's injuries from the altercation. (Tr. at 163-64). The jury thus heard testimony of a theft that had occurred and testimony of physical harm to Kiser.

**{¶38}** While Duncan argues that Kiser's testimony and identification of Duncan as the perpetrator were not credible, the jury was completely apprised through direct and cross-examination of the benefits Kiser was getting for acting as a confidential informant, and her battles with drug addiction. Defense counsel tried to make a connection between some charges that had been dropped that were pending against Kiser and her testimony in the court. However, Detective LeVan steadfastly testified that the only compensation he negotiated with Kiser was financial in nature, and that he never stated or implied he would speak to the prosecutor on Kiser's behalf. (Tr. at 150, 170). In fact, Detective LeVan testified

that he did not know at the time he was working with Kiser that she had charges pending against her. (Tr. at 170).

{¶39} The jury, who saw and heard Kiser's testimony for itself, found Kiser's retelling of the events credible. Under these circumstances, we cannot find that the factfinder "clearly lost its way" or that there was a "manifest miscarriage of justice." Therefore, we do not find that Duncan's conviction for Robbery was against the manifest weight of the evidence. Accordingly, Duncan's assignment of error is overruled.

*Third Assignment of Error*

{¶40} In his third assignment of error, Duncan argues that the trial court imposed court costs and other financial sanctions in its sentencing entry that were not addressed in open court at the sentencing hearing. Duncan cites the case of *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, for the proposition that court costs may not be imposed in a judgment entry when they were not imposed in open court. According to *Joseph*, a case remanded to the trial court for this error is done so for the *limited* purpose of informing a defendant of costs.

{¶41} A review of the record indicates that court costs were imposed upon Duncan in the court's sentencing entry but were not addressed in open court. In its brief, the State does not contest that there was an error in this instance and concedes that the case should be remanded to the trial court so that the trial court

may address the issues of financial sanctions. Based upon our review of the record and the State's concession, Duncan's third assignment of error is sustained.

**{¶42}** For the foregoing reasons, the judgment of the Logan County Common Pleas Court is affirmed in part and reversed in part, and remanded for limited resentencing proceedings to address any potential court costs.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**