[Cite as *State v. Land*, 2014-Ohio-1566.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                     CASE NO. 9-13-49

    v.

DURAIN J. LAND,                         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 13-CR-297

**Judgment Affirmed**

Date of Decision: April 14, 2014

APPEARANCES:

    *Kevin P. Collins* for Appellant

    *Denise M. Martin* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Durain[1] J. Land ("Land") appeals the September 5, 2013 judgment of the Marion County Common Pleas Court sentencing Land to twelve months in prison after Land was found guilty in a jury trial of Trafficking in Heroin in violation of R.C. 2925.03(A)(1)/(C)(6), a felony of the fifth degree.

{¶2} The facts relevant to this appeal are as follows. On June 20, 2013, Land was indicted in trial court criminal case 13-CR-0297 for (Count 1) Trafficking in Heroin in violation of R.C. 2925.03(A)(1)/(C)(6), a felony of the fifth degree, (Count 2) Trafficking in Heroin in violation of R.C. 2925.03(A)(1)/(C)(6), a felony of the fourth degree, and (Count 3) Possession of Heroin in violation of R.C. 2925.11(A)/(C)(6), a felony of the fourth degree. (Doc. 2).

{¶3} On June 24, 2013, Land was arraigned and pled not guilty to the charges against him. (Doc. 4).

{¶4} On July 19, 2013, the charges in trial court case number 13-CR-0297, were joined for the purposes of trial with the charges in trial court case number 13-CR-0223. (Doc. 17).

{¶5} On August 13, 2013, the joined cases proceeded to trial. At trial, the court ultimately suppressed evidence that was submitted regarding the trial court

---

[1] There is a discrepancy in the record on how Land's first name is spelled. We would note that where the defendant was referred to in the transcript, his first name was spelled as "Durrain." The indictment and the appellate briefs in this case spell his name as "Durain."

case 13-CR-0223. (Doc. 45). Land's counsel then moved for a mistrial as to the trial court case before us, 13-CR-0297. (*Id.*) The trial court found that "[s]ince * * * the jury had already heard evidence relevant to the Defendant's possession of suspected heroin, the Court agreed that the Defendant could not receive a fair trial in the instant case [13-CR-0297] because the jury had already heard substantial evidence which would not be admissible and which would be unfairly prejudicial." (*Id.*) Thus Land's motion for a mistrial was granted. (*Id.*)

{¶6} Also on August 13, 2013, the State moved to dismiss Counts 2 and 3 of the indictment against Land. (Doc. 46). That motion was granted. (*Id.*)

{¶7} On September 4, 2013, Land's new jury trial commenced on the single remaining count of Trafficking in Heroin. At trial, the State presented the testimony of four detectives who were all involved in a "controlled buy-bust" of Land wherein a confidential informant purchased $200 of suspected heroin from Land. The State also called a forensic scientist who tested the substance purchased from Land and found the substance to be heroin. After the case was submitted to the jury, the jury found Land guilty of the single count of Trafficking in Heroin.

{¶8} On September 5, 2013, Land was sentenced to twelve months in prison. (Doc. 63). An entry reflecting this sentence was filed that same date. (*Id.*)

It is from this judgment that Land appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**DEFENDANT-APPELLANT'S CONVICTION FOR TRAFFICKING IN HEROIN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE CONSTITUTIONS OF OHIO AND THE UNITED STATES.**

{¶9} In his assignment of error, Land argues that his conviction for Trafficking in Heroin was against the manifest weight of the evidence. Specifically, Land contends that "the record lacks competent, credible evidence that the chain of custody was established for the money purportedly used for the controlled buy" and that none of the detectives who testified actually saw the drug transaction.

{¶10} In reviewing whether a verdict was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Andrews,* 3d Dist. Allen No. 1–05–70, 2006-Ohio-3764, ¶ 30, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st

Dist.1983); *Thompkins*, 78 Ohio St.3d at 387. "[T]o 'reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required.'" *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, ¶ 38, quoting *Thompkins*, paragraph four of the syllabus.

{¶11} In this case, Land was convicted of Trafficking in Heroin in violation of R.C. 2925.03(A)(1)/(C)(6), which reads

**(A) No person shall knowingly do any of the following:**

**(1) Sell or offer to sell a controlled substance or a controlled substance analog;**

**\* \* \***

**(B) Whoever violates division (A) of this section is guilty of one of the following:**

**(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:**

**(a) Except as otherwise provided in division (C)(6)(b), (c), (d), (e), (f), or (g) of this section, trafficking in heroin is a felony of the fifth degree[.]**

{¶12} To prove that Land committed Trafficking in Heroin, the State first called Detective Mike Wheeler. Detective Wheeler testified that on June 3, 2013, he was working with a confidential informant, Lacey Spicer, who told him that

"she'd like to purchase [drugs] from a subject who goes by the name of Rainy."[2] (Tr. at 98). Detective Wheeler testified that the confidential informant sent "Rainy" a text message on that day, June 3. (*Id.*) Rainy replied saying that he was out of town "reupping," which Detective Wheeler explained as "they travel someplace else to buy their illegal narcotics that they're going to sell." (*Id.*) Since "Rainy" was out of town, the buy was postponed to the next day, June 4, 2013. (*Id.*)

{¶13} Detective Wheeler testified that on June 4, 2013, he was with the confidential informant when she sent a text message to "Rainy" requesting to buy $200 worth of heroin. (Tr. at 100). "Rainy" responded that "he was a good" and that they should meet at the intersection of North Greenwood and Adams Street in Marion. (Tr. at 100).

{¶14} Detective Wheeler testified that prior to taking the confidential informant to the specified location, he searched her to make sure that she did not have any drugs on her. (Tr. at 107). He also testified that he placed an audio recording/transmitting device in her purse. (Tr. at 103). In addition, Detective Wheeler testified that he provided the money to Lacey that she was to use in the controlled buy. (Tr. at 101). Detective Wheeler testified that prior to giving the

---

[2] Testimony revealed that the confidential informant was "working off" charges of "Possession of Heroin." She did not testify at trial.

money to Lacey, the money was photographed either on June 3, 2013, or June 4, 2013. (Tr. at 110).

**{¶15}** According to Detective Wheeler, Lacey was instructed to use the phrase "Bye, baby" after the exchange was made so the detectives listening to the audio device in her purse would know that "she ha[d] the narcotics and the exchange ha[d] taken place[.]" (Tr. at 104). Detective Wheeler testified that when the exchange was made he was nearby but did not personally see the transaction. However, Detective Wheeler testified that he was listening to the audio transmission and when he heard Lacey use the phrase "bye baby," he made it to the scene in less than six seconds. (Tr. at 114). Detective Wheeler testified that when he arrived at the scene "Rainy" and Lacey were less than ten feet apart and that he ordered "Rainy" to the ground, who was later identified as Land. (Tr. at 105, 115). Detective Wheeler testified that he handcuffed Land and searched his pockets, finding $200. (Tr. at 106). Detective Wheeler testified that there were no other males or females in the area that he observed at that time. (Tr. at 114-115).

**{¶16}** Detective Christy Utley testified that she was involved in the "buy-bust," overseeing Detective Wheeler, and that when she heard the confidential informant's code phrase "bye baby" over the audio transmission she was also nearby with Detective Wheeler and arrived on scene within six seconds. (Tr. at 125). Detective Utley testified that she secured the confidential informant while

Detective Wheeler secured Land. (Tr. at 126). Detective Utley testified that the confidential informant informed her that "it" was in her pocket. (*Id*.) Detective Utley testified that she recovered four packages, or "bindles," of suspected heroin from the confidential informant at that time. (*Id*. at 126-127).

{¶17} Detective Dan Ice testified that he was also involved in the "buy-bust." Detective Ice testified that prior to the transaction, he saw Land walking on Greenwood street. (Tr. at 140). Detective Ice testified that he took control of the suspected heroin after Detective Utley had taken it from the informant. (Tr. at 142). Detective Ice testified that he field-tested the suspected heroin and that it tested positive for heroin. (Tr. at 144). The heroin was subsequently sent to the Ohio Bureau of Criminal Identification and Investigation ("BCI"). Larry Rentz, who worked for BCI, testified that he tested the substance and that it was, in fact, .3 grams of heroin. (Tr. at 189).

{¶18} In addition, Detective Ice testified that he took the money that was recovered on Land and gave it to Detective Dave Troutman who was also involved in the "buy-bust" conducting surveillance in the area. (Tr. at 157). Detective Troutman testified that he compared the money that was handed to him by Detective Ice, which had been recovered from Land, to the money in the photographs and found that they matched. (Tr. at 161). Detective Troutman testified that there were two copies of five $20 bills. (Tr. at 162). The copies of

the money, the money itself, the heroin, the BCI report and the audio recording were entered into evidence at trial.

{¶19} On appeal, Land contends that there were "chain of custody" issues with the money and the copies of the money. However, Detective Wheeler testified that he photographed the money used in the "buy-bust" either June 3, or June 4, 2013. Detective Utley testified that the money was photographed before the "buy-bust" took place. The money itself was given to the confidential informant, who was searched prior to the transaction. After the transaction, that money was recovered on Land and compared to the photographs of the money by Detective Troutman. Detective Troutman testified that the photograph matched the $200 recovered on Land. Under these circumstances we cannot find that there was any chain of custody issue that would rise to the level of "manifest miscarriage of justice."

{¶20} Land next argues that none of the State's witnesses actually saw the alleged drug transaction. While it is true that none of detectives who testified saw the transaction take place, all four detectives testified that they arrived on the scene within six to twenty seconds, and all four further testified that there were no other individuals, male or female, that were in the area. (Tr. at 114-115, 136, 149, 167). Detective Wheeler also testified that Land and the informant were less than ten feet apart as he approached the scene. Thus the jury could certainly make the

reasonable inference given the fact that the informant was searched before the transaction and had no drugs on her and that she had drugs on her after the recorded transaction wherein she used the appropriate "code word," that she had purchased drugs from Land. Accordingly, we cannot find that Land's conviction for Trafficking of Heroin was against the manifest weight of the evidence and his assignment of error is overruled.

{¶21} For the foregoing reasons Land's assignment of error is overruled and the judgment of the Marion County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**